Good morning, council. Mr. James, you may proceed. I apologize that we're a little late, but we were discussing last case. No problem, John. Thank you. May it please the court, council. My name is Alan James. I'm with Illinois Guardianship and Advocacy Commission, and I'm here today on behalf of Helen Beverly B. Miss B, as I'll refer to her, just really can't seem to catch a break. She's gone through several attorneys, and today she has an attorney from deep Southern Illinois all the way here. I was going to say, Anna is not just around the corner. No, about seven hours away. I did find my way here. Did you talk about the last night at all? Yes, I did. Good. I may talk a little funny. I will try to enunciate clearly. Council, I have a question, even before you begin, if I might, please. Can you tell me why you believe the public interest exception to evidence questions, and they are inherently specific? Yes, Your Honor. I think that was something I was going to address, quite frankly. We have a brief kind of through committee, and I don't know that everything was fully addressed along those lines. We are arguing that this would be generally a de novo review based on statutory compliance, at least as specific, or especially on our first issue concerning appointment of counsel, and on our third issue concerning written alternatives to the treatment being provided. The second issue concerning deterioration and suffering, we can argue that as a statutory compliance based on the statute requires that to be proven, and there's specific definitions. However, there's a case, Deborah Bee, and they took that on sufficiency of evidence as well, and so that one can go either way, but on our first and our third arguments, we would state that that does meet the public exception on movements. Well, Deborah Bee held that even though there was sufficiency of the evidence issues there on the suffering question, there were broader implications. Isn't that correct? That is correct. As to what suffering meant, and whether or not there needed to be a physical manifestation. And that is true, and in this case, on the deterioration and suffering, the did not really follow the guidance on the timeline. I don't believe Deborah Bee was out at that time, but the broader implication here is, is the court took deterioration and defined it, and their finding went outside, didn't even get to the area of what deterioration. So the broader implication here is on deterioration and suffering, is that the Deborah Bee is there, and that they need to follow those guidelines, such as deterioration is, what is the person able to do? Their basic, what we call in our work is ADLs, average daily living. Can they fulfill their bathing? Can they take, dress themselves? Can they clean themselves, bathe, clean their clothes even? Can they do those things? Are they unable to do those things? Is there continuing deterioration? Maybe they weren't able to do those before they came in, but now they've been here a couple of months, they're able to do those. How are they now? Now on suffering, Deborah Bee goes into the idea, are they suffering from anguish? Is there the emotional suffering there? And on both of those here in this particular case, the court in making its finding just said, well, Deborah Bee has deteriorated because she worked out in the public as an accountant. We don't know why she's no longer working, but now she thinks she works for the DMV. So she obviously deteriorated. That's not standard. She said because she doesn't believe that she has a mental illness, she's deteriorated. That's not the standard. Because she doesn't believe she has a mental illness, she is suffering. That's not the standard. The only thing even mentioned, according to human emotions, by Ms. Bee was she was unhappy when the psychiatrist handed her the petition for involuntary treatment. That's not an unexpected emotion to have. There's nothing wrong with that. It's something beyond that, or improper emotions. There's nothing in the record that indicated that Ms. Bee was going around forlorn or in some distress because of the mental illness. Anything beyond the mental illness itself, you mean? Yes. So to the public perception, we think we meet that, and I understand the deterioration and suffering, but there's statutory compliance issues throughout this as well. What about these written materials that were given to her? Are they consistent with the statutory requirement that the patient, in this case, Ms. Bee, was given alternatives and those alternatives were considered? Our argument is that they were not. We don't really know the answer to that question. There was nothing entered into evidence. And excuse me, I brought my allergies from Southern Illinois with me. There's nothing in the evidence, and that is fine. They can testify to those, but we don't know. We don't have Moseric. But more importantly, the doctor said she was given a list of schedules that all get when they enter the facility that she entered. The timeline, it's a little blurred here. She essentially, from the very beginning, from a criminal charge to the time we got this hearing, was around 20 months. And she was at the facility around a year. And she was given the groups and schedules when she entered, and he's saying that's the written alternatives. Well, everybody that enters gets a schedule when the group meetings are. What were the specific alternatives to her treatment for her and her condition that she had? And it wasn't even a specific diagnosis for mental illness. We don't know if she had a mental illness, but there was no specific diagnosis. But what were the alternative treatments available to her? There was really, and at the time prior to the hearing, closer to that time, something, whether it was eight months, a year, or whatever prior, to now, just the first day you get there, they don't even know what's wrong with her, what's going on with her. How can they know what her alternatives to treatment are? What were her written alternatives to treatment? They just weren't provided, is our argument here, that there was nothing provided. There's no showing of what was provided. There's just testimony that she was given, given the group schedule when she arrived. That's what everybody gets. Do we even know whether she was provided the risks and benefits of the medications that were recommended? There was specific, we don't have entered into evidence in the record what those were. We do have specific testimony on what those were, and that he says he discussed those with her. But we don't have in the record what those were. But he said that they were attached to the petition and part of the petition we gave her, but I don't have those. And do they need to be in writing under the statute? They do need to be in writing. Under the statute, and they should be provided. And it needs to be in a manner in which they can, I don't want to get the wording right, in a manner in which they can understand. So if they speak a different language, it would need to be in their language. If they're intellectually disabled, it would need to be something that they might understand more readily than the manufacturer's attachments, which is what we get a lot of times, what all the manufacturer's data on the drugs and what it says it does and treats and everything else. It'll even include the chemistry. Do you want to discuss the right to counsel issue? Yes, that's where I was getting ready to go, because to us, I think that's the major issue here. And Section 3805 obviously gives each person subject to involuntary commitment or treatment right to counsel. We have a liberty interest at stake here. We have the state coming in, there's parents, patriots, saying, we know best, we need to take care of you. And so we are going to place you here in this facility and we're going to treat you. So just as a criminal defendant has rights to counsel, so does a person who is mentally ill who is being either committed against their will or treated against their will. And it's because of that loss of liberty that they have there. And Ms. B was offered counsel, it is not disputed, from the Kane County Public Defender's Office. She rejected that one and represented herself, not disputed. She, and there's a history from the criminal case, while she was upset, and there's a lot of things that cause questions here that are outside of her view. Well, in this case, it's in the mental health court on the criminal side. But she decides to represent herself. You can see by going through the record, she has trouble with the first witness, which is not unexpected. And so then we have Ms. Blake, who was appointed as standby counsel to the public defender, speaks up and says, Your Honor, she'd like me to represent her. So at that point, we have a declaration that I want counsel through the standby counsel appointed for her. The judge says, well, basically, she can be backed up. She says, I want to represent her, but I ask that Ms. Fossey come back, that was the first witness. At that point, we get into, it's a little unusual that we get into battles of wills between the court and the attorneys, but we get into a little bit of a battle of wills here. And he says, I am not going to recall the first witness. You can begin your representation on the next witness. And then Ms. Blake says, well, I can't do that. If I can't, my case is important with that first witness. I can't represent her if I can't do that. Well, wasn't it within the trial court's discretion as to whether or not that witness could be recalled or should be recalled? Sure. It's also... So then why are we, where does the de novo review that you talked about earlier come in? The de novo review comes in right at that point is, that's the critical point. It's his refusal to, but it was counsel who said, I'm not going to step back in. The court didn't prevent her, did he, from becoming counsel as opposed to standby counsel. He just made a ruling with respect to the order of witnesses or the fact that he wouldn't allow recalling the witness. It was the attorney who then said, well, in that case, I'm not going to step forward into this new role. Ms. Blake said, I'm not going to step forward, but there was a very first statement that Ms. B would like me to represent her. That's on behalf of Ms. B saying, I want counsel. At that point, under your case here that found that Mitchell had graciously allowed me to add as under motion to add that case, which I had not seen until recently. Once that request is made, the court needs to address that. The court here never addressed Ms. B about her desire for counsel or not. When Ms. Blake said, I can't do that, I can't represent her, and the judge says, well, I'm not appointed right now. I have not appointed you back as counsel, and she can ask if she wants it, but we're going to proceed to the next witness. Well, at that point, what's Ms. B supposed to do? The person that's standby counsel that says she wants me to represent her just said, well, I'm not going to do it. So she doesn't have that attorney, and the judge says we're moving on. He never, or she, excuse me, she never stopped and asked Ms. B what she wanted. It's that one point in time. There's a lot of, there's a lot, this case was over three days, and there's a lot of discussion about counsel or not, but at that one pivotal point, she should have been asked, and no one asked. It's the same as in the Mitchell case. The judge says, the public defender's office doesn't want to represent you, now you want my attorney, I'm not going to give it to you, we're going on. And here, the judge just went on, and it was really an argument over the first witness, whether or not they're going to be recalled, and they forgot about the fact that Ms. B had asked for counsel. Thank you, Your Honor. Any other questions, counsel? Ms. Campbell. Good morning, Your Honors. I'm going to first briefly address the mootness issue, and then I will talk about the written materials, and then I intend to go to the right to counsel issue. For the mootness, for the public interest exception, the state is arguing that it's not applicable, it is a sufficient for the evidence question, as Justice Stenoff noted. And when they apply a public interest exception in a case that is tending towards a sufficiency of the evidence, it's a situation where there has been a lack of case law so that the court, the appellate court, can provide guidance to the trial court. In this case, it's mentioned in Debra B., which then provides that guidance to the trial court. I would also argue that Lisa P., an earlier decision by this court, also provides the guidance. Suffering is not just physical, it can also be emotional and mental. In this case, there wasn't just the testimony that she was unhappy. In Lisa P., there's a specific statement that the trial court must be deferred to because they had the specific ability or opportunity to observe the respondent. And in that case, the trial court said every time they observed the respondent, they believed she was suffering. In this case, the trial court had the opportunity to observe Beverly at three different weeks for separate hearings. So certainly, her observation should be deferred to. They also, Beverly displays a great deal of frustration with her fitness for trial and the delay in that. She has to be medicated, I believe, at least twice. That's due to her agitation. So certainly, there's more than just being sad to show suffering. Going on to the alternatives. Aren't we beyond sufficiency of the evidence with regard to the alternatives issue? I don't believe so. I argue that there is, in fact, compliance. There is no requirement that the written materials be submitted to the court, provided in the record or the common law. It just requires that they be provided to the respondent. And the doctor testifies clearly that he provided it. And though that was sufficient, because earlier at pages 73 and 74 in the transcript, the doctor is talking. He's asked, are you aware if Beverly was offered any other kinds of treatment less restrictive than medication? And then the doctor goes on to describe, we have daily groups, daily fitness groups. She is selective in attending those kinds of groups. And that she will not attend on a regular basis. And then he goes on further. Individual therapy is available for her from the doctor himself, from a social worker and from a psychologist. And she is also being offered, obviously, fitness for trial sessions. So again, those are specifically designed to remedy her individual problems. Certainly the individual counseling is individualized. So it's not just general group things that everyone gets to. And again, if she's doing individual sessions with any of those three, you know, that is specific for her. But do we know when she was provided that information? The doctor says that she was given it when she came in, which is also the appropriate time. That is when they are offering those alternatives to medication. They're going to offer those lesser alternatives before they go to the more severely restrictive involuntary medication. But that petition for involuntary medication wasn't filed until later. Correct. So how would the alternatives be? Don't they have to be tailored to the medication that she is being given or they recommend for her? At least to be meaningful? The alternatives have to be tailored to her specific mental health needs. And those are addressed in the beginning with the lesser, less restrictive alternatives. And then when those fail to be effective, she's still there after a considerable period of time of trying to do those. And she's only accepting them, or not on a regular basis. So then the doctor moves to the more restrictive effort. Clearly she is aware that those are available to her as she's attending on a semi-regular or irregular basis. But once the petition is filed asking that she be medicated in one or several fashions, how does it say, or is she given anything that says, this medication is only given in alternative to this, this, this, this, and this, and that's why we gave you that printed pamphlet when you arrived? Is it explained that way or does it simply say, as I think it might, you need medication because? The response did not raise the issue of the written materials regarding the medications. So I did not study that as thoroughly as I did the alternatives to treatment. I think the very fact that they didn't raise that, you know, it's a reasonable inference that the reasons for those medications were explained thoroughly enough for the respondents to understand. Again, that wasn't an issue that was raised by the respondent in their brief. Why doesn't Nicholas L. govern this case or apply to tell us the appropriate result with regard to the alternatives and how they should be provided to her? This was a second district case, actually I authored it, but some time ago. I'm sorry, I'm not finding a copy. If you could briefly refresh my. Well, I think the issue there was whether what was provided was sufficient in terms of alternatives. And my recollection is we held that there had to be written documentation that was actually provided to her. Here we have just testimony and nothing in the record. Well, we have the doctor's testimony that the written materials was given to her. The statute does not. But we have no idea. Well, we just went over the content really or what it really was. It's not required in the statute that it be submitted in the record. You know, if it was in the common law record without being taken judicial notice of, you know, as evidence of the hearing, this court could not consider it. If you are adding that requirement, you are adding something to the legislation that the legislature has not done. They don't have a written requirement for those written materials. Or they don't have a requirement that those written materials be included. Now, they do have a requirement that the power of attorney, if it exists, be included. So clearly they are capable of requiring those written materials if they have done so. With this, the written alternatives to treatment is a little more later controversy than the written materials for the medications. But that is going on for years. The legislature has never amended the statute to require any sort of written information be provided on the record. They require the doctor's testimony. Here we have the doctor's testimony. He gave her the written materials. He then delineates exactly what the alternative treatments are. So clearly he has complied with the requirements of the statute. What triggered this particular petition to be filed? I believe it's the fact that she had been there for a considerable period of time. I can't remember how close the two incidents where she was required to be given a medication because of her agitation and her problems with the staff. I can't remember how. But clearly it's because she's not making progress simply with the less restrictive alternatives. So then let's go back to Justice Enoff's question. And that is, if that's what triggered the, in recollection, that's what triggered the petition, why wouldn't then there be a discussion with her in materials, in writing, and something she can see that indicates this is why we are prescribing these alternatives because you have not used these alternatives, which we think would be better suited for you? Again, I would have to assume that was included in the written materials for the medication because you're required to explain why they're being administered. But the pamphlet, I'm sure, does not say we can prescribe, I can never say it in halverdone, olanzapine, risperidone, palperidone, valproic acid. We can prescribe all of these or you can go to therapy. And therapy is considered less restrictive. I mean, the statute does say that she has to know what the less restrictive alternatives are. And there should be some information to her what the side effects would be. And the only, I mean, we're going from, all it says is we're going from this to that to different doses. And the doses go up rather significantly as allowed if they're going to be given from what she did take or what she had previously been willing to take. I mean, it doesn't seem to be a connect is what I'm talking about here. Again, the respondent did not raise the issue about the sufficiency of the written materials for the medications. I know in prior court cases they have rejected where they just give the defendant, or sorry, the respondent, you know, the drug list or the manufacturer's description because they said it's not specific enough and it can treat several conditions. So since the respondent did not raise this issue, I have to, and I think it's a reasonable inference for all of us, that those written materials regarding the psychotropic medications were sufficient. And again, I argue that the information regarding the less restrictive is in compliance with the statute. The doctor said he gave her the written. His exact statement when he's asked about it is the court asked the assistant if she had asked him the question about the writing and risks and benefits of the less restrictive. And the doctor said, when Ms. Beeman was advised of the less restrictive risks and benefits, were those materials provided to her in writing? Doctor's response, yes. At the time of her admission, we did give all the group schedules. What are the expectations? Yes. Less restrictive risks and benefits, that applies to medication. That's not the language that would apply, I mean, if we're thinking about what he meant, would apply to alternatives to medication. I'm sorry, I didn't. You read, he said, in front of me, you read that he talked about providing her information regarding less restrictive risks and benefits. My point is, the risk and benefits language usually is used when you're talking about medication. The risks to taking a particular medication and the benefits from taking that medication. That language is usually different than saying these are alternatives to the medication. So I would submit, based on what you read, and I'll certainly go back and re-read it, that I'm not sure what he was talking about there when he said, what was that terminology? In the prior pages, I think since the doctor had already listed what the less restrictive kinds of treatment than medication were, and that's the judges, or the phrasing of the question on 73, that since the actual services are listed, then to complete that information, you need information about the risks and benefits of those previously mentioned services. So he mentioned less restrictive treatments, and he, doctor, is saying, yes, they were provided in writing to her. Then, of course, there's always the opportunity to cross-examine, and again, while this is the respondent operating pro se, a number of the cases mention that respondents or any pro se litigant is prejudiced because an attorney would have done a better job, and the real question is, were they harmed by the lack of the inquiry? So did you... Well, harmless error can't be used in this type of analysis, can it? And we don't analyze prejudice. There's strict compliance here, and there's second district cases that indicate that. In fact, I think Nicholas was one of them, that we don't use a harmless error analysis on those issues. There are other cases such as Lawrence S., which is a case from this, although it's long ago, and the Michael F. case, which I cited in my brief, is more recent. Is that a second district case? No. Nicholas was in the second district, 2011. Okay. Should we address the right to counsel since we haven't gone there yet? Okay. My major disagreement is with what my opposing counsel referred to as the pivotal moment, and he notes Ms. Blake's statement that the respondent was going to allow her. I think you have to look backward a little bit, because that is not the pivotal moment. The first moment is the first day of trial when the respondent, after she consults with her, the respondent, the first day, asks to proceed pro se. The trial judge continues so that she can consult with her attorney, which is exactly what is supposed to happen. They come back on the second day, which is the actual first day of hearing. Ms. Blake says that the respondent has a request. The respondent steps up and says she wants to proceed pro se. The trial court makes an inquiry, as he should, and that's in the record from 3 to 13. And after that, the trial judge determines that she can proceed pro se. He appoints Ms. Blake as standby counsel. He explains her role would be a consultative role, and then they proceed. It's noted at the beginning of the hearing that day that the first witness is being taken out of order. She has to get to work, so they're going to do her direct, any cross-examination, and then if the respondent wanted to call her in his case, in her case, he would do so that day so that she can finish her testimony and get to work. So in that context, there are some time limitations the court is working with. Before that first witness testifies, Ms. Blake and Beverly consult for 15 minutes. When the first witness is called, she goes along, and towards the conclusion of that first witness's testimony, she starts to have some problem with objections. At that case, at that point, Ms. Blake offers to the respondent, JULIE GALLASTER-LAZARO Sorry! Sorry! Okay, I'll try to do it from memory. Ms. Blake offers, do you want me to represent you? And Ms. Beverly's response is, if you will listen to what I tell you. They then have a consultation. It goes on for some period of time, maybe five minutes, maybe longer. But at some point, the Assistant State's Attorney notes that time is getting on and this witness needs to be going forward. So at that point, Beverly and Ms. Blake come back. The trial judge asks Beverly, do you have any more questions for this witness? Beverly says no. The trial judge dismisses the witness and she leaves the courtroom. They are then calling Dr. Ali and they're waiting for him to arrive. While they're doing that, Ms. Blake at that point then says, Ms. Beverly is going to allow me to represent her. So why is that not a pivotal moment? The pivotal moment was earlier when Ms. Blake offered. And apparently then Beverly declined because... But she can't change her mind? That does happen, doesn't it? She can, but there's... I'm sorry. She can claim to change her mind, but there's no indication that Beverly herself has done so. Because when the trial judge is then consulting with her... Okay, here we are. Here's the whole thing. At the conclusion or getting towards the end of Ms. Fossey's testimony, Ms. Blake says, and this is at R41 to 42, Do you want me to represent you? The respondent, if you listen to my comments... Discussion is held off the record. Ms. Watson mentions the timing. The court says, are there any other questions, Ms. Beamon, of this witness? Respondent, no. Court in redirect. Court dismisses the witness. The witness leaves. Ms. Watson says Dr. Ali is on his way and that she's previously spoken with counsel about stipulating to his credentials and they'll have to check with Ms. Beamon to see if she objects. At only that point does Ms. Blake say, Judge, I'm sorry, Ms. Beamon is going to allow me to represent her in which case she wants to call Ms. Fossey back. Why is it not incumbent on the judge at that particular time to inquire of the respondent as to what her desires are with respect to counsel? I think that's explained in the judge's comment a little further on page 43. Ms. Blake, as of right now, I have not appointed you back as counsel. You're stamped by counsel and Ms. Beamon has not made any request of the court yet to have her be represented by counsel. So you're saying that it's up to the respondent to request out loud rather than it's not the incumbent on the court but only if the respondent had made an audible request. I think, if you'll let me just continue that paragraph. So we're going to continue. Unless Ms. Beamon makes a request of the court, I'm going to honor her request for self-representation under the Constitution and I'm certainly obliged to do so by case law. So that's a golden opportunity. If she wants to request counsel, there's the invitation. If Ms. Blake wants to nudge her and say, Beverly, do you want to make a request to the trial judge for counsel, there is a request. So you're saying that you obviously are supporting and agreeing with what trial counsel said, but remember we're dealing with someone who's been found unfit, correct? Not incapable of necessarily representing themselves but unfit. So, again, you're saying that it had to come from the respondent. I think the judge is correct that he has to respect her election and that doesn't change until she requests. A new position is he invited her to ask. Exactly. And she has not shown hesitation in requesting counsel. She did that the first couple days. At the conclusion when she is being advised to her rights on appeal, she has no hesitation in asking for counsel on appeal. So she's clearly capable and aware that she can request counsel. Yes. And the judge gave her as broad an invitation as I have ever seen with that statement. And Ms. Blake just said okay. Thank you for responding to that. And there's a further comment when, and then the second, actually the third day of the hearing, the second day of the actual trial, the judge notes the history and he again questions her about self-representation. And that goes on for several pages. She again says she wants to represent herself. Even more telling, when she is getting ready to testify on her own behalf, the trial judge asked Ms. Blake if she has discussed her testimony with the respondent. There are some Fifth Amendment concerns because of her ongoing criminal case. And Ms. Blake says, well, the essence of it is that ever since Ms. Blake has talked to the respondent, she has wanted to represent herself. I think that's very telling. All the way along she has wanted to represent herself. And the trial judge has, you know, obviously respected that. And she has never made herself a request to discontinue self-representation. She has had an offer that was declined. Thank you very much. Mr. James. Thank you, Your Honor. Counsel, will you address what we were just talking about a minute or so ago with respect to the invitation the trial court gave to the respondent to ask for a change in the status of counsel's representation? Yes. Just seeing off, I was actually going to come right to you on that. Okay. I thought it was interesting. Counsel stated what the judge said, recited it, that the response was from Ms. Blake, not from GSB. And like I said earlier, why would Ms. B ask for counsel when Ms. Blake essentially withdrew with her statement? I can't understand. What's the role of standby counsel? Well, that's a good question. Actually, when I was a trial lawyer, a prosecutor, I tried a few cases with standby counsel, and it's very difficult. Standby counsel is put in a very precarious position as to what to say on the record. As counsel for the State mentioned, Fifth Amendment concerns, and sometimes counsel, even though the role is limited, does speak for the party. And here, when he said, or she said, Ms. Blake said, okay, doesn't that convey an understanding that the respondent understands it as well? I don't know, because there was no indication on the record that she spoke. My point is, what's her role? And that is my point. Is her role to say, if you really want counsel, you better ask, as the State just argued? That could be her role. That's probably what she should do. Although, I think she didn't, devil's advocate here on my side, I think she didn't ask her to say that because she didn't want to. Presumption that the attorney is effective applied to standby counsel as well as to appointed counsel? I think it does. I think our agency, the attorneys in our agency have talked about how we would refuse that appointment of standby counsel because we're in a bad spot. We're kind of taking on what the person does, even though we're not there. It puts an attorney, any attorney, in a bad spot. And here, trying to surmise what she means by the okay, it doesn't indicate she spoke to Ms. Blake. And I think, or Ms. Blake spoke to Ms. B. I think Ms. Blake is, even before that, like I say, essentially was withdrawing herself. She says, I can't represent her. And we also have to look, something Justice Zeno said, is that she was unfit. And our agency is in a bind, because we believe in promoting for our clients' rights to represent themselves if they want to do so. But the Verzaski case we have even says that one of the terminating factors in whether a person has a right to waive counsel or not is if they're fit for trial. She had never been made fit for trial on a criminal case. She was still considered unfit. And the medication, going to the medication, excuse me, going to the medication issues are really medicating her to make her fit for trial. However, the testimony on the record, unrefuted, is she passed her fitness classes. So it gets to be a mess in the facts in this case, because we've got two different, we've got a criminal case going on outside of this with a mental health case going on, two different court jurisdictions and different issues at play here. But in the Mitchell case, this court stated that a reviewing court should make all reasonable presumptions in favor of a revocation of that waiver. And that's the pivotal point. It's when and was there a revocation of the waiver of counsel. And when Ms. Blake spoke up, that's my understanding of revocation of counsel. Then Ms. Blake, when she didn't get to have the witness stand and testify, withdrew herself as a consideration of counsel. I think the court should have at least explored with Ms. B, first, do you want to make that waiver of representing yourself or not? And second, who are we going to have represent you? And you could have discussed that with Ms. Blake. Well, it seems that Ms. B's position was, yes, I want you to represent me if you listen to my comments or you listen to my questions. And isn't it likely that that's what she would have said to the judge? Yes, I want Ms. Blake to represent me as long as she listens to me. Now, what's the judge going to do? Ask questions about, well, what do you want her to listen to? Yeah, you can get into a whole other mess going down that path. And I think the background in this case for Ms. B is the fact in whatever was going on in that criminal case, according to the record, she was found fit and then found unfit. And I don't really understand, but there's nothing to refute that. It's just background. But that's led to her distrust of the public defender's office. And I think that was the issue that was going on throughout. Does that ever express, though, that she was concerned? She wanted, it appears from everything that we know from this record, she wanted them to ask maybe different questions than they were willing to ask. And is that a suspicion of them, or is it just that this is the way she wanted the case to proceed? I don't, it's surmising on my part. There may have been questions she wanted them to ask. It may have been, she may have been insisting on getting up and testifying, even though she had a right not to. And we deal with that a lot as attorneys, especially in criminal cases. You have the right to, but maybe you shouldn't. All right, well, let's address quickly your other points. Well, if you had something you want to add. I just, the only thing I want to close with is on the alternative treatments, just to remind the Court that Section 2-102A5 states that the psychiatrist shall provide in writing the side effects, risk, and benefits of treatment as well as alternatives to proposed treatment. The case law out there states right. We are disputing the risk and benefits issues here. But we are disputing whether the alternatives to proposed treatment were provided. And 2-107.1A-54F, that statute is strung out, says that they must show other less restrictive services were explored and found inappropriate. And we don't know how they, it's not really addressed. We don't know what the other alternative forms of treatment were. Fitness classes aren't really, I would argue, not a form of treatment, but they're a form to make you fit. But that one issue we do not believe is compliant with and for those reasons. If there's no other questions, thank you. Thank you very much. I have a brief citation to one of Justice Burkett's questions. It's about the role of the standby counsel. You can give us the citation. At page 109 to 110, defense counsel would be appointed to remain a standby counsel. You are able to consult with her even when the witnesses are testifying. I saw the last time when we were doing the hearing, the public defender was in fact conferring with you, telling you to object at certain places and discussing with you certain testimony. Is that correct, ma'am? That's correct. Okay. We can find that. Thank you. All right. Thank you, counsel, for your arguments today. We will take them under advisement. Safe travel to both of you because getting across Elgin can probably be sometimes as dangerous as getting downstate. So have a good day.